Waldman, et al. v. Pia, et al. And I see we have Mr. Galovitz, and you reserve three minutes for rebuttal. Great, thank you so much, Your Honor. May it please the Court. I want to pick up on the discussion of two items before shifting to the issues that are specific to the Sokolow case. First of all, Judge LaValle, I think that the way to resolve your concerns about the by reason of language is to look at the rule of construction in the statute which directs that the statute be construed in order to carry out the purposes to assist victims of terrorism. If you thought that the statute had an over breadth problem, but in this case where there's no question that the state of mind is met, the knowledge requirement is met, I think you can construe it. You don't have to construe it to the limits of what the language might permit. Turning to the U.S. activities prong, I want to be very clear that the U.S. activities prong tracks very closely the decisions of this Court and of Judge Stanton in the Klinghoffer case. In the Klinghoffer case, this Court said that public relations activities, press releases, media appearances, that those were not U.N. related activities. And in Allen Remand, Judge Stanton found that those supported personal jurisdiction. And so Congress was picking up on that. You can tell that not only from the words of the statute, but from the comments of the sponsors who explained that. And so it's very clear that these defendants had fair warning that continuing those activities would subject them to jurisdiction. And the defendants say, yeah, but it's already illegal. And the problem with that position is that they have been permitted by the President to do those things, which of course the President has power to do under Article 2. But they used to have an exemption, but the exemption was ended. Right, but they still do the activities. And the exemption, there have been times when the waiver has lapsed. And sometimes the waiver has lapsed, sometimes it's in place, but they continue the activities, and the government has decided that's not something that the government wants to prosecute. And certainly the President has power to decide this is not something we want to prosecute because of the President's foreign affairs powers or just to take care that the laws are faithfully executed. So this idea that they're- I don't understand. You're saying they have fair warning because of Judge Stanton's decision? No. Shouldn't it require Congress to give them fair warning and list what things would subject them to, specifically list what things would subject them to jurisdiction? Right, they have fair warning because that's what the statute says. The statute says any activity with specified narrow exceptions, something that's for the exclusive purpose of conducting U.N. activities, something that's for the exclusive purpose- How do you know whether a press release falls in that category or not? How would you know? If you do a press release, is that because of your U.N. work or not because of your U.N. work? Yeah, I think that that's where the rule of construction comes in. Otherwise, the exception swallows the rule. We're in the world of implied consent and I'm having a hard time understanding how someone can consent to something, jurisdiction based upon their conduct, when Congress didn't decide which type of particular conduct would qualify. I don't think the words any activity is very complicated. Any activity means any activity. It means any activity. So they're doing an activity unless it falls within one of those narrow exceptions, which like consular services, what does that have to do with the U.N.? So unless it falls within a narrow exception, it's any activity. Congress has been very clear on that. Counsel, you agree, particularly in this case, that there were no activities that subjected the defendants to general or specific jurisdiction. So we deal then with Congress passing a statute that deems the same activities which are insufficient for purposes of general or specific jurisdiction to be sufficient. And despite the fact that the continuation of those activities is illegal. But irrespective of that, the activities are insufficient. And Congress has not conferred a benefit. You say it's irrelevant. The other side says it is. Congress still makes it illegal to do that. How then is that deemed consent? Well, so first of all, Judge Caudill, it's illegal to spend money on behalf of the PLO. The statute says it's legal to spend money. It doesn't say it's illegal to conduct any activity. 5202 is very narrow and specific in that regard. So there's daylight between spending money and like putting statements out on Twitter or doing consular activities. So it's not true that everything is illegal. And even if it was a violation, 5202 is just a violation statute. Even if it was a violation, if in the president's prosecutorial discretion, he decides or the U.S. Attorney's Office decides or the Department of Justice decides, they're not going to prosecute that conduct because there are no important federal interests or they decide not to or there are other political reasons why they don't do it. That doesn't mean that they're not getting some benefit. They're getting a huge benefit from being able to use our economy, our freedom of speech, our social structure, our economic infrastructure. It's a enormous benefit to them. So if I could, I know I'm very short on time, but I do want to talk about the circumstance that might arise if either this court or the Supreme Court upholds the statute. And in that case, this court should not relegate the plaintiffs to a new trial. This court should reinstate the district court's judgment for two independent reasons. First of all, that's what the Supreme Court's mandate instructs this court to do. The Supreme Court's mandate says the judgment of this court is vacated. There is only ever one judgment. And once a judgment is vacated, once the court's judgment is vacated, can I just have a water, thank you so much. Once the court's, this court's judgment is vacated, then the law as it exists today applies. But didn't we construe that to mean our order denying the motion to recall the mandate? Yeah, I saw that in the court's September 20th of 2020 order. You thought that was just wrong? I do, Your Honor. I think that if you look at the words of the Supreme Court's mandate to you, it says the judgment is vacated. It doesn't say the order is vacated. Wasn't that just standard Supreme Court language when they grant, vacate, and remand? No. On a petition? No. I understand the question. The answer is no for three reasons. Reason number one, it's a technical legal word in a technical legal document. The word is judgment. I think you understand my argument. You may disagree with it, but I think you understand my argument. Reason number two. I do. It was extensively argued. We briefed it. Yes. All right. On both sides. Reason number two, the court uses the word orders in other GVRs. And reason number three, we briefed the issue in the Supreme Court, and we said in the Supreme Court, if you think this was a discretionary decision on finality, then that was incorrect, and you should vacate the judgment and not the order. And that's what the Supreme Court did. So I think it's a very, very far reach for this court to say, we're going to, we construed the word judgment to mean something other than the document that exists on our docket called judgment. But I understand, you have my argument on that. But leaving it aside, assuming you don't agree with me, or assuming you don't change your mind, it's still the right thing to do if you look at the sergeant factors, the four sergeant factors. Number one, obviously there's been a law change. Yeah, of course. Of course. Is there a reason to distinguish the issue with respect to the constitutionality of the PSJ VTA in this case from the FOLD case? We only reach the other arguments that you're making if the decision is different on the constitutionality of the PSJ VTA. Right. You reach my arguments either if you uphold the statute, and the statute, it's a facial challenge. I mean, I think to answer the first part of your question directly, I think that it's the same issue in both cases. To give a little more color on that, I think the answer is you reach my issue if you uphold the statute, which I hope you will, or if the Supreme Court upholds the statute, which I think there is a significant likelihood if this court strikes it down. And so when you think about the sergeant factors in that context, we have a change in law. We have an issue that was preserved. We have an issue that was brought to this court in a timely basis under this court's recall of mandate jurisprudence. And there was some back and forth in the briefing about that, but I think the court's decision in Thai, Lao, Lingai really answers this conclusively. And then finally, you have the equities. And the equities are that we had a lengthy trial in which 35 terror victims went through the wrenching process of testifying. We brought people from out of the country. We had translators. We had a 12-member anonymous jury. And we did all those things because Congress thought that this was a tool that was worth deploying to try to disrupt and deter terrorism. And it's not just the U.S. Congress that thinks that. That's what the international community thinks, that these kinds of cases should go forward. I'm going to have you stop there. You have your three minutes for rebuttal. Okay, thank you. Thank you, Your Honor. Good afternoon again, and may it please the court. First, I apologize. My understanding was that we had bifurcated the arguments. We aren't going to be re-arguing the PSJVTA. But now I can't leave unrebutted what Mr. Yalowitz, in his second bite at the apple, has tried to say about the PSJVTA. So let me only deal with new points not covered in my argument in full. His primary argument is one that was squarely rejected by the D.C. Circuit in the Clement case. His argument is, well, yes, it's illegal to do the things we say that the defendants are doing, but the government hasn't prosecuted them, and so therefore that has to be taken as some form of allowance, and therefore that's a benefit to the defendants. That is precisely the argument that the D.C. Circuit rejected in Clement at 923 F. 3rd, 1131. It said that the plaintiff's argument there, Mr. Yalowitz made the same argument in that case, that the government's failure to prosecute, the D.C. Circuit said, that is not positive evidence of a government waiver. So the argument's no better the second time around than when they made it the first time. The second is, who has the enforcement authority here? After all, it's the United States government that has the enforcement authority, and the silence by the United States government is deafening. The United States government hasn't done anything to say any of the conduct that the plaintiffs are complaining about here is improper. Now, that's consequential, because if you look at the full plaintiff's brief at page 39, they cite a prior occasion where the U.S. government warned the PA and the PLO, you may not engage in this conduct under the 1987 ATA. And that's telling, because there is no such warning here from the United States government, no enforcement whatsoever. And then next, the point, and I guess this goes, Judge LaValle, to your question as well, and Judge Bianco, to your question, which is, Mr. Yalowitz says, well, they should have known, because they should have read Klinghoffer, and Klinghoffer says, all this stuff is stuff that could subject the jurisdiction. Well, respectfully, life moves on from Klinghoffer in this court's decision in Waldman 1. The same type of activity, press releases, public advocacy, that Mr. Yalowitz says Klinghoffer said is sufficient for jurisdiction, this court said is not. I'm not making up. You can see at 835 F. 3rd at the following pages, 323, 326, 333, 337, 341 through 43, and 344. This court, in the opinion you authored for the court, Judge Kodal, comprehensively said that array of activities is not sufficient to support jurisdiction. If it wasn't sufficient to support jurisdiction under the Due Process Clause, then it cannot be made sufficient under the Due Process Clause now by Congress saying, okay, it's not sufficient, but 120 days from now, we're going to treat it as jurisdictionally sufficient. And that is my fundamental point, which is any presumption, whether it's an exchange of benefits, whether it is a bauxite type Hammond-Packard presumption, must pivot first, in the first instance, on jurisdictionally sufficient conduct. And Judge Daniels, in his opinion in this case, as we are talking about Socolow, does say that in order for U.S. activities to be sufficient to support a presumption, the conduct has to be related to the underlying issues in this litigation, which Judge Daniels said is what bauxite said, which is we have to deal with conduct. Could I, how in a sentence would you phrase that test, or two sentences? Yes. Plainly, there can be general, there can be specific, and then there can be consent jurisdiction. In order for there to be consent jurisdiction, what is the test? You say you can have, I take it you can have deemed consent, constructive consent based on jurisdictionally sufficient conduct? What's your phrasing of the test? I will engage in shameless plagiarism. I think the test is very well articulated by Judge Robert Carter, in his opinion in Volckart Brothers versus M.V. Palm Trader. It's at 130 FRD at page 289. Judge Carter said the following, quote, the chief practical distinction between the assertion of personal jurisdiction through a valid presumption, as opposed to an unconstitutional punishment, is that the former requires, meaning a presumption, the former requires that the defendant's behavior in the transaction at issue support the presumption. In other words, here's your second sentence then, Judge Kodold, there must be some indication, either from the record or from the nature of the information withheld by the defendant, supporting a jurisdictional finding. He didn't make up the word support. He cites that to bauxite. The reason that's the test is what he's said there, and it's what bauxite said, is that the conduct at issue has to be capable of supporting a jurisdictional finding. It has to be jurisdictionally consequential conduct. And Judge Bold, like Judge Daniels in this case, said the conduct at issue is not jurisdictionally consequential. We already know that. We don't even have to examine it ab initio, because the Second Circuit told us in Waldman one, and the D.C. Circuit told us all of this conduct is. You could have, just to go back to Judge Kodold's question, you could have something that's insufficient constitutionally, but specific for general jurisdiction, but still could be enough for implied consent. You've said that several times in response to several questions. You said if it's not enough for general or specific, it can't be enough for implied consent. I don't think that's the case. There are examples of something that is implied consent, even though it would be independently not enough. In fact, Mallory, isn't Mallory what that's about right now? Mallory is looking at that issue right now. Well, so I respectfully disagree with that, or if I said what you thought I said, let me be clear, which is the only difference between a general jurisdiction and a specific jurisdiction analysis and a consent jurisdiction analysis is that the court doesn't need to complete the equation. They all start out in the same place. Is the conduct at issue capable of supporting jurisdiction? In a specific and general jurisdiction context, the court says, I'm now examining the facts. I'm examining the allegations. In a consent jurisdiction, the court says, well, if I think they've engaged in this conduct, then I don't need to complete the equation if, in fact, there's evidence of consent. What would that evidence of consent be? Precisely what you mentioned, Judge Bianco, right? They're doing business in the state, and more importantly, they're doing business here pursuant to a gratuity, to use Justice Scalia's words in his college savings, a gratuity provided by the forum. And that's jurisdictionally significant conduct, has been since Hess. I take a benefit from the forum. I go along with the rules that the forum sets. That does not exist here because the conduct at issue is not a gratuity provided by the United States. That was the whole purpose of the decision made by the Southern District, which has been the law followed by the government for quite a long time in U.S. versus PLO, that the government cannot exercise authority under the Anti-Terrorism Act and its predecessor of 1987 to preclude the type of U.S. conduct at issue here because the United States previously, antecedently, divested itself of that authority, and it is required to allow the PLO to engage in that conduct here because of the longstanding U.N. headquarters agreement. You can find that at 695 F. Supp. 1466. Can you ever have constructive consent in the absence of some benefit? You can have constructive consent in two scenarios I know of, one of which is the benefit scenario you mentioned, Judge Kodal. The other is the one recognized in Bauxite. If my litigation behavior is such that I refuse to turn over evidence capable of supporting a jurisdictional finding, and that's what Volckart talks about, then the court is allowed to draw the factual presumption that that evidence would support jurisdiction. Okay, but your position is other than in the context of a benefit or litigation-related conduct, there cannot be constructive consent. There could be, and here's the vice of the statute, but it's what Judge Furman has pointed out, which is when there's not two templates, not the Bauxite template, not the benefit template, courts are left to doing what they always do in making jurisdictional findings. They look at facts and circumstances. That is why this statute is improper because it says the court may not weigh facts and circumstances, but there's always that residual authority, but the statute prevents the court from exercising that residual authority here, takes it away from the court. If I'm almost out of time, if I might quickly respond to the points Mr. Yalowitz added in his overtime about the mandate rule, and I agree, Judge Kodal, the court doesn't need to reach that issue if it decides that the district court was correct in the PSJBTA. I'll make only one point about that, which is this court in Waldman 2 already thought about that point, and it said that the court's interest in finality should prevent us from reinstating the judgment or recalling the mandate. That was at 925F3rd, page 575. The Waldman 1 judgment, where we started out in 2016, was the final word of the judicial branch after the Supreme Court denied certiorari. Void judgment cannot be reinstated after the fact by waiving some nunk-pro-tunk want. The Roman Catholic Archdiocese case out of the Supreme Court, 140 Supreme Court, 701, makes it perfectly clear that a void final judgment cannot be reinstated by events that did not occur historically, and that is what the plaintiffs want to do. They want to use a way-back machine here and say if the PSJBTA adopted in 2020 is constitutional, that somehow can be engrafted back to the judgment that was entered in 2015, and that's simply contrary to the law. Void final judgments cannot be reinstated. I'm happy to answer any other questions the court has. Otherwise, we'll rest on our briefs and would ask that the judgment of the district court be affirmed. Thank you, Your Honor. I want to make five points as briefly as I can. First of all, I want to begin with Brown, and that is the latest decision by this court on consent jurisdiction, and I think the reasoning in Brown is compelling because the reasoning in Brown adopts the standard that we are urging the court to adopt, and I'm quoting from page 641 in Brown. Judge Carney says a carefully drawn statute expressly requiring consent to general jurisdiction as a condition on a foreign corporation's doing business in the state, at least in cases brought by state residents, might well be constitutional, and that's what we have here in many ways. We have a much more narrowly drawn statute than the statute in Brown. That's the first thing. The second thing is all this talk by Mr. Berger about the ham-and-packing presumption in this case by Judge Carter is not the relevant standard. Ham-and-packing is about whether there's a punishment and whether there's an unconstitutional punishment, and the controlling case, which I cited in my reply brief, is called Calazos. It's by this court, Calazos. And we know this because a number of cases in this court have relied on Boksyte not for this narrow presumption but for the general concept that you can waive personal jurisdiction, and perhaps the best example is Corporacion Mexicana, which Corporacion Mexicana was a case in which, on appeal, the defendant waived its right to contest personal jurisdiction, even though it had a very good argument. But by its conduct on appeal, it waived that right, and Judge Winter in that case said that what the defendant did was submit to the jurisdiction of the court by not carrying through its jurisdictional argument, and therefore Boksyte controls. But all of those cases rely on a close connection, however you define it, between what the defendant does and an acceptance of personal jurisdiction. And the cases, including Boksyte, draw the distinction between other activities of the defendant, such as not paying a fee, which is not directly related to acceptance of jurisdiction in the forum. So I think that the cases can best be understood by the reasoning in Brown, which is there is a bedrock due process principle. Bedrock due process principle is you are entitled to not be subject to government power arbitrarily. And so if you, there are a lot of ways that Congress can act that is non-arbitrary. That is what due process protects a defendant from, non-arbitrariness, and of course fair warning. But again, the statute says any activity, and it says if you make these payments. The statute is very clear. There is no question on fair warning. And if the legal standard, as Judge Furman understood and acknowledged, if the legal standard is non-arbitrariness, the plaintiffs win. And there is a gap between minimum contacts and consent. You can consent without minimum contacts. And so the question, the constitutional question is, was Congress being arbitrary in the service of the interests of the United States that it identified? And that is a very weighty question. Finally, I do want to talk about the issue of retrying the case, in that the court doesn't, the court is with power. The court has power to say this case does not need to be retried. Mr. Berger, I mean, it's outrageous. He stands here and he says the interest of finality is go retry the case. That's not finality. That's non-finality. And what's that going to do to another dozen anonymous jurors, and all the people who have to come from outside the United States, and all the people who have to sit in the courtroom for seven weeks, and all the people who don't get justice because they're sitting around waiting for Judge Daniels to retry that case. So finality does not help the defendants in this case. And it's not required by the law. This court's decision in United Reinsurance is very clear, where the court recalled the mandate in order to see if jurisdiction could be reinstated. And, in fact, it was. So I appreciate the court's indulgence for the extra time. If you have questions, any of you, I'm eager to answer them, as you can tell. All right. Thank you, Mr. Berger. We'll reserve the decision. That completes the business of the court. If none is to misbehave, I will ask for the adjourned court. Court is adjourned.